1

PAUL B. SNYDER
United States Bankruptcy Judge

2

1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

3

4

✓ FILED
_____ LODGED
_____ RECEIVED

5

**September 30, 2008**

6

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

7

8

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

9

10

11

In re:

WILLIAM   MARSHALL   WELDON   and
SUZANNE LOREE WELDON,

Case No. 03-49320

12

13

            Debtors.
_____

WILLIAM M WELDON and SUZANNE L
WELDON,

Adversary No. 07-04151

14

            Plaintiffs,

**MEMORANDUM DECISION**

15

16

17

18

19

      v.

FIRST NATIONAL BANK OF SIOUX FALLS,
UNITED   STATES   DEPARTMENT   OF
EDUCATION,   SALLIE   MAE,   SLM
CORPORATION,   HEMAR   INSURANCE
CORPORATION OF AMERICA,

**NOT FOR PUBLICATION**

20

            Defendants.

21

22

23

24

25

      Trial was held in this matter on September 16, 2008.  William and Suzanne Weldon

(Plaintiffs/Debtors), in accordance with their complaint, seek to have the debt owed to Sallie

Mae (Defendant) declared discharged pursuant to 11 U.S.C. § 523(a)(8).  At the conclusion of

the trial, the Court took the matter under advisement.  This Memorandum Decision shall

MEMORANDUM DECISION - 1

constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2).

# I

## PROCEDURAL HISTORY

The Plaintiffs filed a Chapter 7 bankruptcy petition on September 5, 2003, and received a discharge on December 24, 2003. The Plaintiffs reopened their bankruptcy case on August 27, 2007, for purposes of filing this adversary proceeding. The adversary complaint was filed on November 27, 2007. A Joint Stipulation and Order Dismissing Adversary Proceeding Against U.S. Department of Education was entered on August 26, 2008. The only remaining Defendant is Sallie Mae.

# II

## FINDINGS OF FACT

The Defendant is the holder of an education loan to Plaintiff, William Weldon. The loan is a Signature Student Loan (Loan) with an initial disbursement date of January 16, 2001. The principal balance of the Loan, as of September 5, 2008, was $84,407.53, with accrued interest of $9,919.90. The Loan has a variable interest rate of 7%. The required payments on the Loan are currently $723.23 per month and will increase to $992.86 per month in June, 2009.

William Weldon has made nine payments on the Loan between 2005 and the date the adversary proceeding was filed. Payments were as follows:

| Date | Payment Amount |
|------|----------------|
| 3/25/05 | $145.35 |
| 9/22/05 | $750.00 |
| 11/07/05 | $423.57 |
| 12/13/05 | $530.00 |

MEMORANDUM DECISION - 2

|          |          |
|----------|----------|
| 2/21/06  | $195.35  |
| 8/21/06  | $300.00  |
| 1/31/07  | $300.00  |
| 5/08/07  | $341.93  |
| 5/29/07  | $341.93  |

William Weldon is a 43 year old married man, with three children, ages 7, 11 and 13. He has an Associate degree in Business Administration, Bachelor of Science degree in Political Science, and one year towards a Masters degree in Political Science. He also has a Diploma in Applied Information Technology obtained in 2001.

Mr. Weldon has been employed for the past five years as a Software Engineer. His current annual salary is approximately $53,000. Mr. Weldon received a 6% pay raise between June and July, 2007, a 6% pay raise between October and November, 2006, a bonus of $1,000 in January, 2007, and a bonus of $10,000 in October, 2006. Testimony indicated that the bonus income was used to pay other outstanding bills, such as credit cards. Mr. Weldon has a promotional opportunity at his current employer to become a Senior Program Engineer in less than five years at a salary of approximately $65,000. In time his salary is expected to exceed $100,000. Mr. Weldon testified that he is progressing satisfactorily in his job.

Mr. Weldon has also earned additional income between 2001 and 2007 as a freelance programmer working on web pages. The most he earned in any one year period doing freelance work was approximately $13,000. He testified that his earnings have since diminished and he does not expect to have significant earnings from his outside programming work in the future. According to his tax returns, Mr. Weldon's adjustable gross income was $66,344 in 2005, $56,005 in 2006, and $48,612 in 2007. Mr. Weldon is not disabled and he

has not been advised by a physician to restrict his work in any manner. He did testify, however, that he does experience back pain if he sits or stands for prolonged periods of time.

Suzanne Weldon has been employed in secretarial positions in the past, but has not worked since January, 2006, when she was laid off from work as a junior loan processor at a subprime mortgage lender. She does not have a college degree. Her social security statement indicates that she had tax earnings of $18,427 in 2005 and earnings from 1991 to 2000 as follows: $12,879; $17,555; $20,194; $6,122; $2,501; $13,038; $13,270; $15,572; $16,312.

Ms. Weldon home schools their youngest and oldest children. Their middle child attends public school. She testified that the home schooled children receive their lesson plans from the public school on the internet on their home computer. Ms. Weldon has some degenerative disk disease, scoliosis and experiences severe headaches. She is not disabled or under a physician's restrictions from working, but has pain if she sits or stands for long periods of time. Ms. Weldon testified that she believes the cost of child care would almost equal what she could earn in a secretarial position.

In January, 2008, the Plaintiffs had monthly net income of $3,419 and expenses of $3,387. As of August, 2008, the Plaintiffs state that they have monthly income of $3,512.76 and expenses of $3,485.95.

Mr. Weldon has pre-tax deductions from his paycheck for 401K contributions, health insurance, flexible medical savings account contributions, and for long term disability and life insurance. Although they live modestly, they have claimed monthly expenses for high speed internet service (needed for children's home schooling), a music download service and membership to a Bally fitness center.

## III

### CONCLUSIONS OF LAW

The burden of proof under 11 U.S.C. § 523(a)(8) is initially on the lender to establish the existence of the debt, and that the debt is owed to, insured, or guaranteed by a governmental agency or nonprofit institution, or was incurred for an obligation to repay funds received as an educational benefit, scholarship or stipend. There is no dispute that this initial burden has been met. The burden of proof then shifts to the debtor to establish undue hardship within the meaning of § 523(a)(8). Raymond v. Northwest Educ. Loan Ass'n. (In re Raymond), 169 B.R. 67, 69-70 (Bankr. W.D. Wash. 1994) (citing The Cadle Co. v. Webb (In re Webb), 132 B.R. 199, 201 (Bankr. M.D. Fla. 1991)).

There is no statutory definition of "undue hardship." In the case of Pena v. United Student Aid Funds, Inc. (In re Pena), 155 F.3d 1108, 1112 (9th Cir. 1998), the Ninth Circuit Court of Appeals adopted a three-prong test set forth in Brunner v. New York State Higher Educ. Servs. Corp. (In re Brunner), 831 F.2d 395, 396 (2d Cir. 1987). Under this standard, the Debtor must establish

> (1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for [the debtor] and [any] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Brunner, 831 F.2d at 396.

Under the Brunner test, "the burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted." Rifino v. United States (In re Rifino), 245 F.3d 1083, 1087-88 (9th Cir. 2001) (citing In re Faish, 72 F.3d 298,

MEMORANDUM DECISION - 5

306 (3d Cir. 1995)). "If the debtor fails to satisfy any one of these requirements, 'the bankruptcy court's inquiry must end there, with a finding of no dischargeability.'" <u>Rifino</u>, 245 F.3d at 1088 (quoting <u>Faish</u>, 72 F.3d at 306).

The first prong of the <u>Brunner</u> test requires an examination of a debtor's current income and expenses to ascertain if he or she could maintain a minimal standard of living if required to repay the student loans.

The Defendant challenged several of the Plaintiffs' expenses, including an "uncategorized" expense of $78.39, "bank charges" of $36.30, "bankruptcy" (attorney fee) of $100, and $176 per month towards Mr. Weldon's 401K Plan. Mr. Weldon also had pre-tax deductions from his salary for a flexible medical savings account contribution and for long term disability and life insurance. A preponderance of the evidence establishes that while the monthly expenses related to the Bally fitness center membership, music download service and the 401K contributions may assist in elevating the Plaintiffs' physical and mental state of mind, and while the retirement contributions are financially prudent, they are not necessary given the Plaintiffs' significant student loan debt.

The Court concludes that the Plaintiffs have not met their burden of proof to establish that based on their current allowable expenses and income, periodic payment of the loan would cause their standard of living to fall below what is minimally necessary. To satisfy the first prong, the debtor must do more than show that finances are tight. "The proper inquiry is whether it would be 'unconscionable' to require the debtor to take steps to earn more income or reduce her expenses." <u>Birrane v. Pennsylvania Higher Educ. Assistance Agency (In re Birrane)</u>, 287 B.R. 490, 495 (9th Cir. BAP 2002) (quoting <u>Nascimento v. United Student Aid Funds, Inc. (In re Nascimento)</u>, 241 B.R. 440, 445 (9th Cir. BAP 1999) (citations omitted)).

The Plaintiffs' monthly income as of August, 2008, was stated as $3,512.76 and expenses of $3,485.95. Taking into consideration additional income they could contribute by ceasing their contributions to their voluntary retirement plan, reducing their insurance, ceasing payments for the health club, and music download service, significant monthly payments could be made on their student loans.

Further, Ms. Weldon has made a voluntary choice to stay home. She is relatively young and has not established that she is physically restricted from obtaining employment for which she would be qualified. It is not the Court's intention to question her decision to stay home to care for her children, however, she has not established that the income she could earn as a secretary would fail to exceed any attendant child care expenses. This is true as her children are of school age and would not need full-time care. Mrs. Weldon could also choose to continue to home school her children, but seek employment at nights or on weekends. Such an option is not found by the Court to be unconscionable simply because it is disruptive, unpleasant, or undesirable. Congress has chosen to make the dischargeability of student loans difficult. The Plaintiffs have not met the first prong of the Brunner test by a preponderance of the evidence.

The second prong of the Brunner test focuses on future finances and requires the debtor to establish that additional circumstances exist indicating that his state of affairs is likely to persist for a significant portion of the repayment period. The "additional circumstances" under the second prong need be exceptional only in that they "demonstrate insurmountable barriers to the" debtor's ability to repay the student loan. Nys v. Educational Credit Mgmt. Corp. (In re Nys), 446 F.3d 938, 946 (9th Cir. 2006). Applying this standard, the debtor must establish "by a preponderance of the evidence that, for a substantial portion of

the loan repayment period, [he] would not be able to maintain even a 'minimal' standard of living if" he was required to pay the full amount of the student loan debt.  <u>Carnduff v. U.S. Dep't of Educ. (In re Carnduff)</u>, 367 B.R. 120, 129 (9th Cir. BAP 2007).

In the instant case, Mr. Weldon is a well-educated 43 year old man with no physical limitations.  Within five years, his salary is expected to significantly increase, and thereafter he could be earning $100,000 per year.  He has received significant bonuses and cost of living increases in the past, and in the future he could earn additional income as a freelance programmer.  Expenses will also decrease as the monthly expense for their bankruptcy attorney should be paid in full shortly.  Further, for the reasons stated above, the Court concludes that Ms. Weldon could return to employment now or in the near future.  The Plaintiffs have failed to establish by a preponderance of the evidence that additional circumstances exist indicating that their state of affairs is likely to persist for a significant portion of the repayment period.

The third prong of the <u>Brunner</u> test requires that the debtor prove that he has made good faith efforts to repay the loans.  "Good faith is measured by the debtor's 'efforts to obtain employment, maximize income, and minimize expenses.'"  <u>Birrane</u>, 287 B.R. at 499 (quoting <u>In re Roberson</u>, 999 F.2d 1132, 1136 (7th Cir. 1993)).  A debtor is required to exhibit affirmative good faith efforts to repay his loan and the court is to consider a debtor's efforts to negotiate a repayment plan, "although a history of making or not making payments is, by itself, not dispositive."  <u>Mason v. Educ. Credit Mgmt. Corp. (In re Mason)</u>, 464 F.3d 878, 884 (9th Cir. 2006); <u>Birrane</u>, 287 B.R. at 499-500.

In this case, the Plaintiffs have not established that they have made a good faith effort to maximize their income or minimize their expenses.  Suzanne Weldon has been

MEMORANDUM DECISION - 8

unemployed since January, 2006, and has not taken any efforts to obtain employment since she was laid off. The Plaintiffs' middle child attends public school and the other children have attended public school in the past. Although the Court is not inclined to rule that the children must attend public school so that Ms. Weldon can obtain employment, the Plaintiffs have not established that home school for these children is necessary or presented any evidence that she has considered the possibility of working in the evenings or on the weekends to supplement their income. A debtor may not willfully or negligently cause her own default, but rather the condition must result from "factors beyond his reasonable control." Birrane, 287 B.R. at 500. Further, considering the significant bonuses and outside income received by Mr. Weldon in the past, the Plaintiffs' payments to the Defendant have been minimal. The Plaintiffs elected to pay other debts, rather than make payments to the Defendant. The Plaintiffs have failed to establish by a preponderance of the evidence that they made good faith efforts to repay the Loan.

The Court is not unsympathetic to the Plaintiffs' situation, however, Congress has intentionally chosen to impose demanding requirements for the dischargeability of student loans. Accordingly, the Court concludes that the Plaintiffs have failed to establish by a preponderance of the evidence that payment of the Loan to the Defendant will impose an undue hardship. The Loan is not discharged.

DATED:        September 30, 2008

_Paul B. Snyder_
_____
Paul B. Snyder
U.S. Bankruptcy Judge